IMPERIAL PALACE, Appellant, *v.* ISIAH
DAWSON, Respondent.

No. 16525

March 18, 1986                                    715 P.2d 1318

[Rehearing denied July 29, 1986]

*Jerry Collier Lane,* Las Vegas, for Appellant.

*King, Clark, Gross & Sutcliffe,* Las Vegas, for Respondent.

## OPINION

By the Court, GUNDERSON, J.:

The Imperial Palace, a self-insured employer, appeals a district court judgment affirming an award of workers' compensation benefits to Isiah Dawson.[1] Dawson had received a work-related back injury, which was later aggravated by an automobile accident that occurred while he was traveling to a physical therapy treatment. Nominally, this appeal concerns the applicability of the "going-and-coming rule" to these facts. As we perceive it, however, the more significant concern raised by this appeal centers upon how Imperial Palace delayed paying Dawson his compensation benefits for longer than one and one-half years. In light of the self-insured employer's duty to treat its workers' compensation claimants fairly, we not only affirm the district court's judgment but impose sanctions.

On January 18, 1984, Dawson injured his back in a fall from a stepladder while in the course of his work for the Imperial Palace. After initial diagnosis and treatment, a medical examination in early February indicated that Dawson still had back pain. Then, on February 8, 1984, he was in an automobile accident while en route to a physical therapy session. Although the accident aggravated his back pain, it did not affect the course of his treatment.

On March 21, 1984, Imperial Palace suspended Dawson's compensation benefits, ostensibly because his physician had not submitted a disability extension slip. Then Imperial Palace terminated Dawson's benefits, purportedly due to the non-industrial nature of his intervening injury. Dawson thereupon challenged these decisions before the hearing officer. Under NRS 616.5414, an employee who is dissatisfied with his employer's decision may request the hearing officer to review his claim.

On May 2, 1984, the hearing officer rendered his decision, reversing the suspension and termination of Dawson's benefits, and ordering the benefits reinstated. The Imperial Palace appealed this decision to an appeals officer under NRS 616.5422(1). In a November 13, 1984 order, the appeals officer—who has the ultimate right to determine facts *de novo*—

---

[1]An employer may elect to provide its employees with workers' compensation benefits in lieu of the benefits provided by the State Industrial Insurance System (SIIS). Before an employer may leave the SIIS program and become a self-insured employer, among other things it must demonstrate the wherewithal to meet the expenses of operating a compensation program and must accept the responsibility of complying with the workers' compensation laws. NRS 616.112, .272, .291-.298.

confirmed the hearing officer's decision. The appeals officer noted that the automobile accident resulted from Dawson's seeking treatment for his prior work-related injury; thus, injuries sustained in the accident were work-related. In addition, the appeals officer noted that Dawson's claim had been closed without an adequate basis and that Imperial Palace continued to refuse Dawson benefits even after the hearing officer had entered his decision. From these actions, the appeals officer concluded that the Imperial Palace had been "engaging in bad faith practices in the management of this claim."

Thereafter, Imperial Palace petitioned for judicial review. On April 2, 1985, the district court found the appeals officer's decision to be well supported by the evidence. Also, the district court found no abuse of discretion or errors of law. Accordingly, the district court entered its judgment ordering Imperial Palace to comply with the appeals officer's decision.

On May 10, 1985, the Imperial Palace initiated an appeal to this court and moved the district court for a stay pending appeal. Although the district court declined to grant a stay, Imperial Palace, nonetheless, continued to withhold Dawson's benefits.

Dawson, then, sought assistance from the Department of Industrial Insurance Regulation, which directed Imperial Palace to pay his benefits, but still payment was not forthcoming. Dawson returned to the district court and moved for sanctions, and only then, in the fall of 1985, did Imperial Palace disburse approximately $17,000 of accrued benefits to Dawson and begin paying Dawson his temporary total disability compensation every other week. In this posture, Imperial Palace has presented its appeal to this court.

1. We first discuss Imperial Palace's asserted reason for depriving Dawson of his compensation benefits for longer than a year and one-half, to-wit: that an intervening injury absolves the workers' compensation system from liability to treat the prior injury. In particular, Imperial Palace asserts that Dawson's benefits are precluded under the "going-and-coming rule." As a general proposition, this rule contemplates that injuries an employee sustains while traveling to or from work are not deemed to arise out of or in the course of employment. Crank v. Nev. Indus. Comm'n, 100 Nev. 80, 81-82, 675 P.2d 413 (1984). However, when an injury arises out of the course of employment, an employee may receive workers' compensation benefits. NRS 616.515.

We note that in recovering from a work-related injury, the employee must accept reasonable medical treatment. NRS 616.565(2). If this medical care injures the employee, the work-

ers' compensation system pays for the treatment of the additional injury. *E.g.*, Breen v. Caesars Palace, 102 Nev. 79, 715 P.2d 1070 (1986). In order to receive treatments, the system also requires the employee to travel to the place of his medial treatment. Thus, similarly, it has also been held the system should pay for accidental injuries sustained while traveling to or from that treatment. *E.g.*, Laines v. Workman's Comp. Appeals Bd., 122 Cal.Rptr. 139, 142-44 (Cal.Ct.App. 1975); Moreau v. Zayre Corp., 408 A.2d 1289, 1293 (Me. 1979); Immer & Co. v. Brosnahan, 152 S.E.2d 254, 257 (Va. 1967); *see generally* 1A. Larson, The Law of Workmen's Compensation § 13.13 (1985). We agree. Both types of subsequent injuries are foreseeable consequences of a work-related injury, and we therefore believe that the workers' compensation system should pay for the treatment of a subsequent accidental injury to an employee which occurs while traveling to receive medical care.

2. We next examine the duties of a self-insured employer such as Imperial Palace. Self-insured employers accept the duty of complying with the Nevada Industrial Insurance Act and regulations promulgated thereunder by the Department of Industrial Relations. NRS 616.272; NAC 616.156(3)(a). Among other things, these require a claimant to receive the compensation ordered by a hearing officer unless the payment of that compensation is stayed. NRS 616.5416(5), .5422(2). Another rule requires self-insured employers "to promptly report, administer and settle all claims." NAC 616.156(3).

The Imperial Palace, however, complied with neither of these duties. For example, after the hearing officer's decision, Imperial Palace, without the benefit of a stay, withheld Dawson's compensation. It then also ignored the appeals officer's decision. In addition, even after the district court expressly denied Imperial Palace a stay pending appeal, the employer paid Dawson no benefits. Not before burdening its injured employee with the necessity of seeking further administrative and judicial relief did Imperial Palace pay Dawson his long-withheld entitlement. These breaches of duty delayed Dawson's receipt of compensation from May 1984, until the fall of 1985.

Delays of this unjustifiable kind subvert the humanitarian purposes underlying the worker's compensation system. As this court said in Dep't Ind. Relations v. Circus Circus, 101 Nev. 405, 411-12, 705 P.2d 645, 649 (1985):

> Self-insured employers are not excepted from the law in this State. When a self-insured employer elects to accept the benefits of administering its own worker's compensation program, in exchange for relief from tort liability, it must

assume the burdens. One of the burdens of the system is the prompt payment of benefits, and if payment is determined to be unwarranted, the self-insurer must seek reimbursement of benefits it paid. The self-insured employer is protected by the system in the same manner as is the SIIS: it must pay the benefits until a stay order is issued, or until an appeal determines the injury is not compensable. If the stay order is denied, as was the case here, the self-insured employer must not deny the injured worker the prompt payments mandated by worker's compensation statutes, agency regulations and the decisions by this court. The self-insured employer is obligated to act as the SIIS would do in like circumstances. Merely because the appeal process may take quite some time, the self-insured employer cannot properly delay payment, thereby "starving out" its injured employee and violating the public policy established by our worker's compensation scheme. Along with the benefits of being a self-insurer, this is one of the burdens accepted: the employer must pay the claim and seek recovery later if payment is in error, thus assuring the employee some measure of economic security. The injured employee must not be forced to survive on no income for whatever time the employer may expend in pursuing the appeal process.

3. After reviewing Imperial Palace's conduct in light of the foregoing, we feel compelled to sanction Imperial Palace. Under NRAP 38, we may award attorneys' fees, damages, costs, and such other relief as we may fashion. In re Herrmann, 100 Nev. 149, 152, 679 P.2d 246 (1984); Varnum v. Grady, 90 Nev. 374, 377, 528 P.2d 1027 (1974). In the instant appeal, after taking into account the legal efforts required to protect Dawson's interests, we sanction Imperial Palace $7,500.00 to help defray Dawson's legal expenses. Furthermore, considering the approximately seventeen months that Dawson's benefits were withheld unjustifiably, we believe that damages in the form of interest also constitute an appropriate additional sanction. Calculating the interest at one percent (1%) per month upon the $17,000.00 of withheld benefits, this additional sanction equals some $2,900.00. Finally, if Imperial Palace fails to pay these sanctions to Dawson and his counsel within thirty (30) days after the date that this opinion is filed, interest at the rate of two percent (2%) per month shall accrue upon any unpaid sums.

4. In summary, we affirm the district court's judgment. We also sanction Imperial Palace $10,400.00 for its dilatory conduct

in handling Dawson's claim.[2] In the future, when self-insured employers engage in unacceptable dilatory tactics, in addition to reasonable attorney's fees this court may award the aggrieved worker double costs, NRAP 38(b), and also damages computed on the basis of two percent (2%) interest per month on all sums improperly withheld. NRAP 38(a); Varnum v. Grady, cited above.[3]

MOWBRAY, C. J., SPRINGER, STEFFEN and YOUNG, JJ., concur.

---

[2]In Dep't Ind. Relations v. Circus Circus, cited above, we indicated that the Department of Industrial Insurance Regulation should reconsider the fine the Department had imposed on Circus Circus—in part because it appeared to us that management personnel of Circus Circus were not culpably implicated in the wrongful withholding of benefits, but had only failed to pay as a result of incorrect legal advice. In those circumstances, and given the fact that we had not previously imposed sanctions for improperly withholding benefits after denial of a stay order, we believed the employer should not be penalized. In the instant case, however, we have been advised by counsel at oral argument that the improper decision to withhold benefits from respondent, even after a stay had been denied to Imperial Palace, emanated from management personnel of the employer corporation itself.

[3]As set forth in Varnum v. Grady, id., there is substantial historical authority for employing this measure of damages when imposing sanctions for dilatory abuse of appellate procedures. See also Wheeler v. Floral M. & M. Co., 10 Nev. 200 (1875); Gammans v. Roussell, 14 Nev. 171 (1879); Allen v. Mayberry, 14 Nev. 115 (1879); Escere v. Torre, 14 Nev. 51 (1879); Lehane v. Keyes, 2 Nev. 361 (1867).